UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
BOARD OF TRUSTEES OF THE
SHEET METAL WORKERS
INTERNATIONAL ASSOCIATION
LOCAL UNION NO. 28 TRUST
FUNDS,

                    Appellants,

    -against-

RICHARD KERN,

                    Appellee.
------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 18-CV-7295 (FB)

**BLOCK, Senior District Judge:**

Under the Bankruptcy Code, debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" are not dischargeable. 11 U.S.C. § 523(a)(4). The issue in this case is whether the bankruptcy court correctly determined that a debt owed by Richard Kern to the Sheet Metal Workers International Association Local No. 28 Trust Funds ("Local 28") was *not* the result of defalcation. For the following reasons, that Court holds that the bankruptcy court was correct and, therefore, affirms its judgment.

I

Kern owned and operated Cool Sheetmetal, Inc. ("Cool"), a subcontractor that supplied and installed ductwork on construction projects. Over the years, Cool

employed members of Local 28. Like many unions, Local 28 and its national union maintained various welfare funds. The relevant collective bargaining agreements ("CBAs") required Cool to make contributions ("employer contributions") to both the national and local funds. The CBAS further required Cool to remit deductions from the wages of union members ("employee contributions") to the funds.

Cool intermittently failed to make the required contributions to the funds. In November 2009, as part of a settlement of a dispute with Local 28 over delinquent employer contributions, both Cool and Kern executed a confession of judgment for roughly $3.7. Cool made partial payments towards the settlement for a time, but financial difficulties prevented it from complying in full. In September 2010, Local 28 obtained a state-court judgment of a little over $3 million based on the confession of judgment. Cool and Kern partially satisfied the judgment but were again unable to do so in full. As a result, Cool was terminated as an authorized union employer in December 2011. As of January 2012, the balance due on the judgment in favor of Local 28 was approximately $2.3 million.

Kern declared bankruptcy in April 2013; Cool followed suit in September of that year. In Kern's bankruptcy proceeding both the national union and Local 28 asserted claims for unpaid employer contributions. They further argued that the claims were not dischargeable because the contributions were plan assets held in trust under ERISA, and that Kern's failure to cause Cool to make them amounted to

2

"defalcation while acting in a fiduciary capacity" under § 523(a)(4).

The national union's claim was adjudicated first and resolved in *In re Kern*, 542 B.R. 87 (Bankr. E.D.N.Y. 2015) ("*Kern I*"). That case involved only employer contributions, the union having conceded that "there is no issue in this case about the misuse or misappropriation by [Kern] of funds collected from employees." *Id.* at 94. On cross-motions for summary judgment, the bankruptcy court held that Kern was, as a matter of law, "acting in a fiduciary capacity" because he was a fiduciary under ERISA. *See id.* at 98. It concluded, however, that Kern did not commit "defalcation" within the meaning of § 523(a)(4). *See id.* at 98-99. It thus held that Kern's debt to the national union was dischargeable and granted him summary judgment on that basis; the union filed a notice of appeal, but later withdrew it.

In 2017 the bankruptcy court addressed Local 28's claim. *See In re Kern*, 567 B.R. 17 (Bankr. E.D.N.Y. 2017) ("*Kern II*"). As in *Kern I*, it held that Kern "ha[d] not committed fiduciary defalcation as to the contributions due to the Benefit Funds that he did not deduct from employee paychecks." *Id.* at 30.

Unlike the national union in *Kern I*, Local 28 further claimed that Kern had also failed to remit *employee* contributions deducted from their paychecks. The bankruptcy court held that two of the deductions—for union dues and its "political action league"—were not trust assets because they were not directed to benefit funds

3

under ERISA. *See id.* at 31. By contrast, it held that a third deduction—to the "vacation fund"—was an asset of an ERISA benefit plan, that Kern acted as a fiduciary in respect to that fund, and that his failure to remit employee contributions to the fund amounted to "defalcation." *See id.* at 31-35.

In sum, the bankruptcy court held that Kern's debt to Local 28 was dischargeable except as to the vacation fund. It set the matter down for trial "to determine the non-dischargeable amount of money [Cool] deducted from employee paychecks for the Vacation Fund and did not remit to the Benefit Fund." *Id.* at 37.

Both Local 28 and Kern attempted to appeal to district court. Judge Azrack, however, dismissed the appeals as premature because the bankruptcy court's decision would not be final and appealable until it had conducted the trial and fixed the amount of the debt owed to the vacation fund.

When the case returned to the bankruptcy court, Local 28 elected to waive its claim regarding the vacation fund in order to secure an appealable judgment. The bankruptcy court approved the parties' stipulation dismissing that claim and entered a final judgment dismissing all of Local 28's remaining claims with prejudice. Local 28 timely appealed.

## II

On appeal, Local 28 challenges only the bankruptcy court's conclusion that its claim for *employer* contributions to the funds were dischargeable; it does not

4

challenge the conclusion that *employee* contributions for union dues or the political action league were assets held in trust under ERISA. Since the bankruptcy court reached its conclusion on motions for summary judgment, the Court's review is de novo. *See In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001) ("[W]ith respect to the grant of partial summary judgment, the posture in which this appeal reaches us, we review de novo whether, viewing the record on the light most favorable to the non-movant . . . any genuine and disputed issue of material fact underlies the bankruptcy court's decision.").

"A creditor must satisfy three elements in order to invoke the Section 523(a)(4) exception to the dischargeability of a debt." *In re Duncan*, 331 B.R. 70, 77 (Bankr. E.D.N.Y. 2005). "First, the debt must result from a fiduciary's defalcation under an 'express or technical trust' involving the entrusting of money or other property to a fiduciary for the benefit of another." *Id.* "Second, the debtor must have acted in a fiduciary capacity with respect to the trust." *Id.* "Third, the transaction in question must be a 'defalcation' within the meaning of bankruptcy law." *Id.*

Local 28 focuses exclusively on the first element, arguing that unpaid employer contributions were trust assets under ERISA. That issue is governed by the Second Circuit's decision in *In re Halpin*, 566 F.3d 286 (2d Cir. 2009). In that case, the circuit court held that employer contributions to an ERISA benefit fund

"become assets [of the fund] only after being paid." *Id.* at 290. "Accordingly," it reasoned, "the unpaid amounts are debts; they are not assets held in trust for the benefit of the creditor." *Id.*

Importantly, however, the Second Circuit noted that employers and benefit funds "were free to contractually provide for some other result." *Id.* Though technically dicta, the statement has led district courts in the circuit to conclude that unpaid employer contributions are plan assets held in trust if the relevant CBA so provides. *See, e.g.*, Sheet Metal Workers Nat'l Pension Fund v. Maximum Metal Manufacturers, Inc., 2015 WL 4935116, at *7 (S.D.N.Y. Aug. 18, 2015) (citing cases).

That is precisely the case here. Local 28's CBAs provide that

> [c]ontributions are considered assets of the respective funds and title to all monies paid into *and/or due and owing* said Funds shall be vested in and remain exclusively in the Trustees of the respective Funds. The Employer shall have no legal or equitable right, title or interest in or to any sum paid by *or due from* the Employer.

R.120, R.151, R.203 (emphases added).[1]  Therefore, employer contributions become assets of the funds—at least as a matter of contract law—once they are "due and owing," even if they have not yet been paid.

The bankruptcy court recognized as much in *Kern I*: "The CBA's define unpaid contributions to the Benefit Funds as trust funds. Thus, an express statutory

---

[1] Citations are to the record on appeal.

6

trust exists for purposes of § 523(a)(4)." 542 B.R. at 96 (citation omitted). But it then rejected the national union's argument that "that every dollar collected or received by [Cool] were trust funds which were required to be paid on to the Benefit Funds for any unpaid contributions owing by [Cool.]" *Id.* at 98; *see also Kern II*, 567 B.R. at 30 (rejecting the same argument by Local 28).

The bankruptcy court's reasoning is entirely consistent with the Second Circuit's holding in *In re Halpin* that "employer contributions become [trust] assets only after being paid." 566 F.3d at 290. But it seemingly ignores the circuit court's dictum that the parties to a CBA are "free to contractually provide for some other result." *Id.*

Perhaps the Second Circuit would reconsider or refine its pronouncement if squarely confronted with the issue. And perhaps those district courts that have followed it are wrong. Those questions, while interesting, are irrelevant to this case because the dispositive issue is not whether unpaid employer contributions are trust assets, but whether Kern's failure to pay them amounted to "defalcation."[2]

*That* issue is governed by *Bullock v. Bankchampaign, N.A.*, 569 U.S. 267 (2013), in which the Supreme Court provided the authoritative definition of

---

[2]By contrast, the status of union dues and contributions to the political action league as trust assets was dispositive as to those aspects of Local 28's claim. As noted, Local 28 has not challenged the bankruptcy court's conclusion that they were not.

7

"defalcation" under § 523(a)(4):

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent . . . . Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.

*Id.* at 274-75 (citations and internal quotation marks omitted; emphasis in original). The *Bullock* Court described as "similar" the Second Circuit's preexisting definition: "[D]efalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness—a showing akin to the showing required for scienter in the securities law context." *In re Hyman*, 502 F.3d 61, 68 (2d Cir. 2007).

The bankruptcy court quoted the Supreme Court's standard in full. It then noted that "the sole issue is [Kern's] alleged failure to cause [Cool] to make contributions to the Benefit Funds from [Cool's] own general assets." *Kern I*, 542 B.R. at 98. It distinguished that issue from a claim that Kern was "absconding with or misusing funds that had been contributed by [Cool's] employees to be paid on the Benefit Funds, or funds which were deducted from the employees' paychecks to be paid on to the Benefit Funds." *Id.* Further, it found no support in the record for

8

the union's assertion that Kern was "using [Cool's] assets for his own personal use, such as by paying the mortgage on his home." *Id.* at 99.³ On the contrary, the record demonstrated that Kern was "trying to keep his struggling company afloat," with Kern personally paying $150,000 of Cool's debt to the funds, and with Kern and his wife contributing more than $600,000 of their own money "in order to keep [Cool] operating." *Id.* "Thus," the bankruptcy court concluded, "the record . . . does not demonstrate self-dealing by [Kern], nor bad faith, moral turpitude, or other immoral conduct. *Id.* It further concluded that the union had "fallen far short of demonstrating the intentional conduct that the fiduciary knows is improper, or reckless conduct that criminal law often treats as equivalent to intentional conduct, as required under *Bullock*." *Id.*

Local 28 offers no response to the bankruptcy court's defalcation analysis. Indeed, its opening brief does not even cite *Bullock*. In any event, reviewing the issue de novo, the Court entirely agrees with the bankruptcy court's analysis. Misdirecting employees' contributions amounts to theft of their money. But the same is not true of an employer's contributions from its own funds. The principal of a company in financial straits faces a host of competing demands with what are, by definition, insufficient resources to pay them all. That he or she must make the

---

³The bankruptcy court's defalcation analysis is set forth in *Kern I* and responds to arguments made by the national union. The record and arguments are identical in this case. *See Kern II*, 567 B.R. at 30 (adopting analysis from *Kern I*).

9

difficult decision to pay some creditors and not others (perhaps even, as in this case, contributing personal funds) hardly means that he or she is engaged in intentional wrongdoing or reckless conduct. Moreover, as the bankruptcy court aptly explained, the argument that unpaid employer contributions are not dischargeable "would essentially elevate the general unsecured right of the Benefits Funds over the rights of secured creditors." *Kern I*, 542 B.R. at 99. To that the Court adds the further irony that it would privilege Local 28's claim over claims for wages by the very employees the union represents.

Local 28 argues that ERISA funds are entitled to special status as a matter of policy. It faults the bankruptcy court for declining to address such policy considerations in its decision. *See Kern I*, 542 B.R. at 100 ("This Court has conducted a statutory, not a policy, analysis and therefore, will not address the policy arguments asserted by the parties." (internal quotation marks omitted)).

ERISA no doubt reflects a congressional policy of protecting the assets of benefit funds. *See, e.g.*, *Benson v. Brower's Moving & Storage, Inc.*, 907 F.3d 310, 314 (2d Cir. 1990) ("Congress placed employee benefit plans in a position superior to the original promisee, analogous to a holder in due course."). But by the same token, the Bankruptcy Code embodies a policy of giving honest debtors a "fresh start," and it is well-established that exceptions to dischargeability must be narrowly construed to effectuate that policy. *See In re Duncan*, 331 B.R. at 76 (citing, *inter*

10

*alia*, *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). The Supreme Court expressly considered this policy in fashioning its definition of "defalcation": "[Our definition is] consistent with a set of statutory exceptions that Congress normally confines to circumstances where strong, special policy considerations, such as the presence of fault, argue for preserving the debt, thereby benefiting, for example, a typically more honest creditor." *Bullock*, 569 U.S. at 276. The bankruptcy court was entirely correct not to revisit the Supreme Court's policy analysis.

### III

The CBAs obligated Cool to make employer contributions to Local 28's funds. ERISA made Kern personally liable for Cool's failure to do so. The Bankruptcy Code, however, made that debt dischargeable unless it was the result of "defalcation." The bankruptcy court did not err in holding that Local 28 failed to establish defalcation under the Supreme Court's definition in *Bullock*. Accordingly, its judgment is affirmed.

**SO ORDERED.**

  /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 24, 2020